# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

| | |
|---|---|
| In re The Swatch Group Management Services AG | ) |
| Serial No. 85/485,359 | ) |
| Filed : December 1, 2011 | ) |
| Mark: TOURBILLON | ) |

## NOTICE FORWARDING CERTIFIED LIST

A notice of appeal to the United States Court of Appeals for the Federal Circuit was timely filed on June 16, 2014, in the United States Patent and Trademark Office (USPTO) in connection with the above-identified trademark application. Pursuant to 15 U.S.C. § 1071(a)(3) and Federal Circuit Rule 17(b)(1), the USPTO is today forwarding, to counsel for Appellant, a certified list of documents comprising the record in the USPTO.

Associate Solicitors Christina J. Hieber and Thomas L. Casagrande represent the Director in this appeal. Counsel for Appellant may contact Ms. Hieber or Mr. Casagrande at (571) 272-9035 to arrange for designating the appendix. *See generally* Fed. Cir. Rule 30(b).

If a copy of the notice of appeal and the docketing fee of $500.00 have not been filed with the Federal Circuit, counsel is reminded that a copy of the notice and the docketing fee should be promptly filed with the Federal Circuit.

The mailing address of the Federal Circuit is:

> U.S. Court of Appeals for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, DC 20439

All papers served on the Solicitor in connection with this appeal should be

delivered as follows:

> By hand:    Office of the Solicitor
> Madison West
> 600 Dulany Street, Room 08C43A
> Alexandria, VA

> By mail:    Office of the Solicitor
> Mail Stop 8, P.O. Box 1450
> Alexandria, VA 22313-1450

Respectfully submitted,

**Michelle K. Lee**
Deputy Under Secretary of Commerce for
Intellectual Property and Deputy Director of the
United States Patent and Trademark Office

Date:  July 28, 2014          By:_____

**Shane M. Walter**
Paralegal Specialist
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
571-272-9035

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

The Swatch Group Management Services AG
(The Swatch Group Management Services SA)
(The Swatch Group Management Services Ltd.)

                                      Appellant,


              v.                    **NOTICE OF APPEAL**

Trademark Trial and Appeal Board,

                                      Appellee.


    Notice is hereby given that The Swatch Group Management Services AG (The Swatch Group Management Services SA) (The Swatch Group Management Services Ltd.) in the above-mentioned case hereby appeals to the Court of Appeals for the Federal Circuit for a review of the Decision entered on April 18, 2014 by the Trademark Trial and Appeal Board affirming the Examiner's refusal to register Trademark Application Serial Number 85485359.  The order or decision was received on April 18, 2014.

Respectfully submitted,

Jeffrey A. Lindenbaum
Collen IP
The Holyoke-Manhattan Building
80 South Highland Avenue
Ossining, NY 10562
914-941-5668
jlindenbaum@collenip.com
Attorney for Appellant

Dated: June 16, 2014

THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
April 18, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

*In re The Swatch Group Management Services AG (The Swatch Group Management
Services SA) (The Swatch Group Management Service Ltd.)*

———

Serial No. 85485359

———

Jess M. Collen and Audra Kemp of Collen IP Intellectual Property Law PC for The
Swatch Group Management Services AG.

Melissa Vallillo, Trademark Examining Attorney, Law Office 113 (Odette Bonnet,
Managing Attorney).

———

Before Quinn, Kuhlke, and Masiello, Administrative Trademark Judges.

Opinion by Masiello, Administrative Trademark Judge:

The Swatch Group Management Services AG (The Swatch Group
Management Services SA) (The Swatch Group Management Service Ltd.) has
applied to register on the Principal Register the mark shown below for goods
identified as "Jewellery, horological and chronometric instruments," in
International Class 14.[1]

---

[1] Application Serial No. 85485359 filed on December 1, 2011 under Trademark Act § 1(b),
15 U.S.C. § 1051(b).

Serial No. 85485359



# TOURBILLON

Color is not claimed as a feature of the mark. The record contains the following description of the mark: "The mark consists of the term 'TOURBILLON' below a design of a 'tourbillon.'" No claim is made to the exclusive right to use TOURBILLON for horological and chronometric instruments apart from the mark as shown; however, applicant has not disclaimed the exclusive right to use the word TOURBILLON for jewelry.[2] Applicant claims ownership of U.S. Reg. No. 3699058, on the Principal Register, relating to the same mark as the one involved herein, but with a disclaimer of the word TOURBILLON, for:

> Retail store services featuring jewelry, watches, chronometers, clocks and wall clocks; on-line retail store services featuring jewelry, watches, chronometers, clocks and wall clocks, in International Class 35;
>
> Repair and maintenance of jewellery, watches, chronometers, clocks and wall clocks, in International Class 37.

The trademark examining attorney refused registration under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1), on the ground that applicant's mark in its entirety merely describes the goods. When the refusal was made final, applicant filed a request for reconsideration, which was denied. This appeal ensued. Applicant and the examining attorney have filed briefs, and applicant has filed a reply brief.

---

[2] *See* applicant's request for reconsideration of April 12, 2013, in which applicant withdrew the previously offered general disclaimer of TOURBILLON and limited its disclaimer to "horological and chronometric instruments."

Serial No. 85485359

1.    Refusal under Section 2(e)(1).

Section 2(e)(1) of the Trademark Act provides for the refusal of registration of a mark "on account of its nature" if it "[c]onsists of a mark which, (1) when used on or in connection with the goods of the applicant is merely descriptive or deceptively misdescriptive of them."  15 U.S.C. § 1052(e)(1).  A term is merely descriptive of goods or services within the meaning of Section 2(e)(1) if it forthwith conveys an immediate idea of an ingredient, quality, characteristic, feature, function, purpose or use of the goods or services.  *In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012); *see also, In re Gyulay,* 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987).  Whether a mark is merely descriptive is determined in relation to the goods or services for which registration is sought and the context in which the term is used, not in the abstract or on the basis of guesswork.  *In re Abcor Development Corp.*, 588 F.2d 811, 200 USPQ 215, 218 (CCPA 1978); *In re Remacle*, 66 USPQ2d 1222, 1224 (TTAB 2002). A mark need not immediately convey an idea of each and every specific feature of the goods in order to be considered merely descriptive; it is enough if it describes one significant attribute, function or property of the goods. *See In re Gyulay*, 3 USPQ2d at 1010*; In re H.U.D.D.L.E.*, 216 USPQ 358 (TTAB 1982); *In re MBAssociates*, 180 USPQ 338 (TTAB 1973).  Moreover, the mark need not describe all of the identified goods. Rather, a descriptiveness refusal is proper with respect to all of the identified goods in an International Class if the mark is descriptive of any of the goods or services in that class. *In re Chamber of Commerce*, 102 USPQ2d at 1219; *In re Stereotaxis Inc.*,

Serial No. 85485359

429 F.3d 1039, 77 USPQ2d 1087, 1089 (Fed. Cir. 2005). The determination that a

mark is merely descriptive is a finding of fact and must be based upon substantial

evidence. *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 82 USPQ2d 1828, 1831 (Fed.

Cir. 2007).

    (a)    <u>The word TOURBILLON</u>.

Applicant's mark consists of a word, TOURBILLON, and a design.

Addressing first the word TOURBILLON, the record leaves no doubt that it is

merely descriptive of a feature or component of horological or chronometric

instruments. Applicant admits that "The term describes a mechanism that is part

of the escapement found inside a highly specialized watch."[3]    An entry from

<wikipedia.org> made of record by the examining attorney explains:

> In horology, a tourbillon … is an addition to the
> mechanics of a watch escapement.  Developed around
> 1795 by the French-Swiss watchmaker Abraham-Louis
> Breguet from an earlier idea by the English chronometer
> maker John Arnold a tourbillon aims to counter the
> effects of gravity by mounting the escapement and
> balance wheel in a rotating cage, to negate the effect of
> gravity when the timepiece (and thus the escapement) is
> stuck in a certain position.
>
> Originally an attempt to improve accuracy, tourbillons
> are still included in some expensive modern watches as a
> novelty and demonstration of watchmaking virtuosity.
> …
> Gravity has a direct effect on the most delicate parts of
> the escapement, namely the pallet fork, balance wheel
> and hairspring. Most notably is the hairspring, which
> functions as the timing regulator for the escapement and
> is thus the part most sensitive to any exterior effects,
> such as magnetism, shocks, temperature, as well as inner

---

[3] *See* applicant's response of September 14, 2012, p. 1; applicant's brief at 6.

Serial No. 85485359

> effects such as pinning positions (inner collet), terminal
> curve, and heavy points on the balance wheel.[4]

The record contains at least three other descriptions of what a "tourbillon" is understood to be, all consistent with the description quoted above.[5] The examining attorney has also submitted a substantial amount of evidence showing the word "tourbillon" used to describe a *type* of watch. *See, e.g.*, Office action of October 12, 2012, pp. 55 (Audemars Piguet brand "tourbillon watch"); 60 ("tourbillon watch"); 45 ("Tourbillon Watches"); 48 (Omega brand "Tourbillon wristwatch"); 50 ("Ulysse Nardin Royal Blue Tourbillon watch" having "a one-minute tourbillon device"); 51 (Vacheron Constantin "Patrimony Traditionnelle 14-day tourbillon"); 52 (Zenith Defy brand "Tourbillon Titanium Watch" featuring "a visible tourbillon"); and 64 ("Montiek Tourbillon Watches"). Thus it has been demonstrated that TOURBILLON is, at a minimum, highly descriptive with respect to a type of horological instrument,[6] namely, a watch having a tourbillon, and with respect to a significant component of such a horological instrument.

Applicant and the examining attorney have argued over whether the designation TOURBILLON is merely descriptive with respect to the goods

---

[4] Entry for "Tourbillon" from <wikipedia.org>, Office action of March 16, 2012, p. 7. The Board gives consideration to evidence taken from Wikipedia, bearing in mind the limitations inherent in this reference work, so long as the non-offering party has an opportunity to rebut the evidence by submitting other evidence that may call its accuracy into question. *See In re IP Carrier Consulting Group*, 84 USPQ2d 1028, 1032 (TTAB 2007). In the case before us, the Wikipedia evidence was submitted with the examining attorney's initial Office action, and applicant had an opportunity to rebut it.

[5] Office action of October 12, 2012, pp. 8 and 11-15.

[6] *See* definitions of "horological" and "horology" from <collinsdictionary.com>, Office action of October 12, 2012, p. 19.

Serial No. 85485359

identified as "jewellery." The examining attorney maintains that TOURBILLON is merely descriptive of jewelry, because jewelry is commonly understood to encompass watches, and watches may include tourbillons.[7] Applicant, by contrast, maintains that "the watch industry does not consider watches as 'jewelry'"[8] and that, accordingly, TOURBILLON is arbitrary as applied to jewelry and therefore registrable for such goods. Applicant requests that we take judicial notice of a dictionary definition of "watch" (attached to applicant's brief),[9] which makes no reference to jewelry. Applicant also argues that if the word "jewellery" in applicant's identification of goods were read to include watches, it would render the identification of goods redundant, because watches are included under the goods identified as "horological and chronometric instruments."[10]

In support of her argument, the examining attorney has made of record copies of internet advertisements for watches, in which the watches are referred to as a category of jewelry.[11] The advertisements from <qvc.com> and

---

[7] Examining attorney's brief at 7-8.

[8] Applicant's brief at 13.

[9] The Board may take judicial notice of dictionary definitions, *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imp. Co.*, 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983), including online dictionaries that exist in printed format or have regular fixed editions. *In re Red Bull GmbH*, 78 USPQ2d 1375, 1377 (TTAB 2006). In this case, the definition proffered is from the online dictionary found at <merriam-webster.com>, and we take notice of it.

[10] Applicant's brief at 14.

[11] Response to request for reconsideration, pp. 30-48.

Serial No. 85485359

<sundancecatalog.com> clearly categorize watches as a subcategory of jewelry.[12] The advertisements from <helzberg.com> and <walmart.com> also would be perceived as categorizing watches as jewelry.[13]  In order to controvert applicant's claim that the watch industry does not consider watches to be jewelry, the examining attorney has made of record information regarding 12 U.S. trademark registrations in which the goods are identified as "jewelry, namely watches" or equivalent wording.[14]  We note also that, for purposes of registration, the Patent and Trademark Office considers the wording "jewelry watches" and "inexpensive non-jewelry watches" to be acceptably definite terms for the identification of goods, as both are expressly listed in the U.S. Acceptable Identification of Goods and Services Manual (2014 version).  This suggests that the Office considers the wording "jewelry watches" to be neither ambiguous nor self-contradictory.

The evidence persuades us that, in the marketplace, some watches are readily perceived to be included in the category of jewelry.  That this interpretation might cause applicant's identification of goods to be redundant is not a matter of concern; redundancy in identification does not limit or otherwise adversely affect the evidentiary value of a registration certificate.[15]  Accordingly, we agree with the

---

[12] *See id.* at 32 and 47.  The Sundance advertisement includes watches in a list of jewelry; the QVC advertisement bears the heading "QVC : Jewelry : Watches" and states "Update your jewelry collection with a treasure from our gallery of watches."

[13] *See id.* at 30, 41.  The Helzberg web page bears the heading "Home > Jewelry > Watches"; the Walmart web page bears the heading "Jewelry: All Watches."

[14] *Id.* at 4-29.

[15] In view of the clear language of Section 7(b), 15 U.S.C. § 1057(b), and its reference to "the goods or services specified in the certificate," it is difficult to imagine a situation in which it would be appropriate to ignore a discretely identified item in an identification of goods

Serial No. 85485359

examining attorney that TOURBILLON is merely descriptive of jewelry, inasmuch as the category of jewelry includes watches and watches may include, as a significant component, a tourbillon.

(b)    The design element of the mark.

We next consider whether the design element of applicant's mark merely describes applicant's goods. A design which consists merely of an illustration of one's product is unregistrable under Section 2(e)(1), just as merely descriptive wording would be. *In re The Singer Mfg. Co.*, 255 F.2d 939, 118 USPQ 310, 311-12 (CCPA 1958) ("It is, of course, true that a design consisting merely or essentially of a pictorial representation of the goods on which it is used is descriptive, and is not a valid trademark.") (citing *In re Pierce Arrow Motor Car Co.*, 55 F.2d 434, 12 USPQ 315 (CCPA 1932)); *In re LRC Products Limited*, 223 USPQ 1250, 1251 (TTAB 1984); *see* TMEP 1209.03(f). To be considered merely descriptive, the illustration or representation need not be completely accurate, realistic or true-to-life. *LRC Products*, 223 USPQ at 1252. As is the case with word marks, if the design suggests information about the goods in a way that requires imagination, thought, or perception to reach a conclusion as to the nature of the goods, it is not merely descriptive within the meaning of Section 2(e)(1) and may be registered. *See In re*

---

when interpreting the certificate, even if that item were redundant. Indeed, the Board has declined to read identifications of goods and services in such a way as to perceive any limiting effect as between discretely identified items in an identification. *See In re Midwest Gaming & Entm't LLC*, 106 USPQ2d 1163, 1166-67 (TTAB 2013); *In re Thor Tech Inc.*, 90 USPQ2d 1634 (TTAB 2009). *Cf. Tri-Star Marketing LLC v. Nino Franco Spumanti S.R.L.*, 84 USPQ2d 1912, 1916 (TTAB 2007) ("While respondent's identification of goods "wines and sparkling wines" may be redundant or inartfully worded in view of respondent's actual use, this identification is not fraudulent.").

Serial No. 85485359

*Nett Designs, Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001). In particular cases a design has been found to be not merely descriptive within the meaning of Section 2(e)(1) because it is "a stylized presentation";[16] "an arbitrary design which *suggests* the goods themselves to one familiar with [them]";[17] "a fanciful... design";[18] "a highly schematic or fanciful representation" and "not merely an illustration of [the goods] but ... sufficiently arbitrary and fanciful";[19] or "stylized rather than realistic."[20]

The examining attorney points out that applicant, in its description of the mark, has stated that the design element of the mark represents a tourbillon.[21] It is also clear, as discussed above, that "tourbillon" describes goods that are within the scope of applicant's identified goods.

The examining attorney maintains that the design element "is the legal equivalent of the wording TOURBILLON"; and that "the design element in the mark features various parts commonly found in a tourbillon, with such parts appearing as they would in a tourbillon. Therefore, the design in the mark is a representation of a tourbillon without additional source-indicating elements."[22] In

---

[16] *Giltspur Expo Industries, Inc. v. Expo Communications, Inc.*, 227 USPQ 394 (TTAB 1985).

[17] *In re Curtiss-Wright Corporation*, 183 USPQ 621, 622 (TTAB 1974).

[18] *In re The Laitram Corporation*, 194 USPQ 206, 209 (TTAB 1977).

[19] *LRC Products*, 223 USPQ at 1251-52.

[20] *General Electric Co.*, 209 USPQ 425 (TTAB 1980).

[21] Response filed September 14, 2012: "The mark consists of the term TOURBILLON below a design element of a tourbillon."

[22] Examining attorney's brief at 10-11.

Serial No. 85485359

support of her argument, the examining attorney has made of record a number of explanations, diagrams and illustrations found on the internet (including the entry from <wikipedia.org> quoted above). By reference to this evidence, and especially to the diagram entitled "Anatomy of a Tourbillon"[23] (reproduced below alongside applicant's mark), the examining attorney identifies the elements of the design portion of applicant's mark as follows:

- the carriage or "cage":    the bold, three-armed figure that spans the entire design;

- the escape wheel:    the serrated circle at the upper right;

- the balance wheel:    the bold outer circle;

- the balance screws:    the fourteen short lines intersecting the outer circle;

- the balance spring:    the thin, concentric circles inside the bold outer circle;

- the "arbor":    the black dot at the center of the design;

- various levers:    "the designs inside and on the left side of the device."[24]

---

[23] Found at <tourbillonwatches.com/tourbillon-parts.html>; *see* Office action of March 16, 2012, p. 11.

[24] Examining attorney's brief at 11.

Serial No. 85485359

**Anatomy of a Tourbillon Parts**





(Note that in the mechanical diagram on the left the object depicted has been rotated approximately 180 degrees around its central axis, as compared to the line drawing in applicant's mark, such that the "serrated circle" appears at the upper right-hand corner of applicant's mark, while the corresponding element in the mechanical diagram appears at the lower left-hand corner.)

We note also the photograph of "An assembled tourbillon" in the entry from <wikipedia.org>, set forth below:[25]





An assembled tourbillon, clearly showing balance wheel, pallet fork and escape wheel.

---

[25] *See* Office action of March 16, 2012, p. 7.  It is unfortunate that this photograph, as placed in evidence, was split up on two consecutive pages, but it has probative value as one of the representations of a tourbillon that most closely resembles applicant's mark.

11

Serial No. 85485359

Applicant "does not dispute that the elements of a tourbillon consist of,
among other things, a carriage, a balance wheel, an arbor, a balance spring, balance
screws, and escape wheel and levers."[26]   Applicant also admits that "the design in
the Applicant's mark depicts one of several mechanisms that are included in some
of Applicant's goods."[27]   However, applicant argues strenuously that "[t]he depiction
in Applicant's mark is not an exact representation of the Applicant's extremely
intricate escapement, but is an abstract, highly stylized version of the Applicant's
unique mechanism."[28]   Applicant emphasizes that tourbillons are works of art that
differ widely in appearance "from creator to creator," combining aesthetics with
watchmaking artistry.[29]   Applicant also claims ownership of a design patent for a
watch that includes a tourbillon.[30]   Applicant addresses the specific graphic aspects
of its design as follows:

> [T]he depiction of [the] elements [of a tourbillon], as
> shown in Applicant's trademark design..., are highly
> simplified and stylized.   The concentric circular features
> are intentionally stylistic, and are not intended to
> reproduce the functional mechanisms of the actual
> escapement, depicted in [applicant's] design patent....
> The center of the trademark design is blackened, as is the
> mechanism in the top left segment, above the blackened
> center.   The wheel appearing in the top right portion of
> the design appears to be raised above the main design.
> Indeed, this highly stylized rendering lacks all necessary

[26] Applicant's reply brief at 2.

[27] Applicant's brief at 12.

[28] *Id.* at 8.

[29] *Id.* at 6-7.

[30] *Id.* at 6.   A copy of the patent was submitted with applicant's response of September 14,
2012.

12

Serial No. 85485359

> mechanical elements that would be need *[sic]* to be
> present in a functioning watch movement.
>
> …Applicant's escapement is not depicted in a realistic
> manner in its trademark.    The mark's streamlined
> appearance exaggerates the radial patterns, thereby
> accentuating the eye-catching components of the
> Applicant's proprietary escapement design.
>
> …
> Applicant's escapement is unique.    The applied-for
> trademark representing Applicant's escapement is highly
> stylized.  It is by no means an exact representation, as
> asserted by the Examiner.[31]

We have given close consideration to the above account of the various graphic

elements and stylistic choices that are embodied in applicant's design.  However,

the fact that the design includes graphic and stylistic elements that another artist

might not have chosen does not alone dispose of the question of descriptiveness.

This is not a copyright case where such a narrative of artistic choices might shed

light on whether a drawing satisfies the minimum level of creativity required for a

copyright.  The ultimate guideline in this case is whether the design forthwith

conveys an immediate idea of a feature of the goods and lacks any additional

fanciful, arbitrary, or suggestive matter.  *See In re Chamber of Commerce*, 102

USPQ2d at 1219; *In re Gyulay,* 3 USPQ2d 1009.  Here, we have no doubt that it

does.

We acknowledge that applicant's design does not represent every mechanical

element of a tourbillon; for one thing, a tourbillon is only one part of a more complex

mechanism and must include mechanical elements that allow it to interact with the

---

[31] Applicant's reply brief at 2-3.

Serial No. 85485359

remainder of the mechanism.[32] It is also obvious that applicant's design necessarily differs from a photograph of a tourbillon *in situ*, as can be seen in the photographic examples reproduced in applicant's reply brief (discussed further below).    A photograph's graphic qualities are affected by the camera angle, the lighting of the object, the materials of which the object is made and the colors of those materials, and many other visual details.    Any line drawing – even one that is complete in every detail – will differ graphically from a photograph of the object depicted. However, most of the cases that address descriptiveness of designs have involved black-and-white drawings lacking in photographic detail, and many of them found such drawings to be merely descriptive. *In re McIlhenny Co.*, 120 USPQ 284 (TTAB 1959), aff'd 278 F.2d 953, 126 USPQ 138 (CCPA 1960); *In re Society for Private & Commercial Earth Stations*, 226 USPQ 436 (TTAB 1985); *In re Underwater Connections, Inc.*, 221 USPQ 95 (TTAB 1983); *In re Harry N. Abrams, Inc.*, 223 USPQ 832 (TTAB 1984); *In re Universal Filters, Inc.*, 218 USPQ 456 (TTAB 1983). As noted above, the fact that applicant's design is not completely accurate, realistic or true-to-life does not exempt it from a finding of mere descriptiveness. *LRC Products*, 223 USPQ at 1252.    In the present case, where the product depicted is a relatively complex mechanical device, it may be that the clearest way to immediately convey information about the goods is to present a depiction in which

---

[32] The record contains many photographs of the internal mechanisms of watches that are, unsurprisingly, incomprehensible to the layperson. We do not find such illustrations probative of the proposition that applicant's mark does not depict a tourbillon because one simply cannot see in the photographs whether a mechanism resembling applicant's design lies hidden in the complexity of the mechanism.

14

Serial No. 85485359

extraneous features have been stripped away, allowing the essential elements of the product to be seen in isolation.

With the exception of the examining attorney's rather cryptic reference to "various levers" (which do not appear to be clearly depicted in the drawing of the mark), we agree with the examining attorney that most of the fundamental components shown in the "Anatomy of a Tourbillon" diagram are represented with a high level of graphic clarity in the design element of applicant's mark. The clarity and detail of the design are such that the design immediately conveys the singular idea of a tourbillon. Moreover, we see no appreciable distinctiveness in the choice of graphic devices used in the creation of the design. It is a black and white drawing showing the design of the tourbillon in two dimensions. The tourbillon is depicted in a flat, frontal view. The use of black lines of varying thickness is a very rudimentary element of graphic design that is so commonly used in drawings of all kinds that it cannot be considered distinctive. The decision to represent the central, circular plate in black rather than white also is hardly sufficient to render the design distinctively stylized or fanciful. Virtually all of the visually prominent components of the tourbillon, as depicted in the "Anatomy of a Tourbillon" diagram, are depicted in the applicant's design, rendered with graphic clarity. When we compare applicant's design to the photograph of "An assembled tourbillon,"[33] we come to the same conclusion. Overall, none of the stylistic elements of applicant's design is sufficiently distinctive to be considered fanciful, arbitrary, or suggestive.

---

[33] The photograph appears in the <wikipedia.org> entry for "Tourbillon" and is in the record at Office action of March 16, 2012, p. 7.

Serial No. 85485359

Moreover, the design portion of the drawing consists solely of a tourbillon design and contains no additional elements that might be deemed fanciful, arbitrary, or suggestive.

Applicant, in its reply brief, describes at length the appearance of fifteen tourbillons of its competitors,[34] in order to demonstrate that "the escapement mechanism is designed according to the whimsy of the manufacturer," and that "Artistic renditions of the mechanism vary widely from creator to creator, in the same way a sculpture varies from artist to artist."[35] Clearly, tourbillons have been designed in many differing configurations, and there is no reason on this record to assume that there is a single definitive tourbillon. However, the design shown in applicant's mark represents the visually prominent components of a tourbillon, and this fact is corroborated in the record in the various descriptions of how a tourbillon is constructed and in applicant's admission as to the fundamental components of a tourbillon. ("Applicant does not dispute that the elements of a tourbillon consist of, among other things, a carriage, a balance wheel, an arbor, a balance spring, balance screws, and escape wheel and levers.")[36] Moreover, several of the third-party tourbillons shown in the record closely resemble applicant's design in their fundamental components. For example, in the photograph of the Ulysse-Nardin tourbillon,[37] shown below at left, one can clearly see the three equally-spaced arms

---

[34] Applicant's reply brief at 5-11.

[35] *Id.* at 11.

[36] *Id.* at 2.

[37] Applicant's reply brief at 6.

Serial No. 85485359

of the carriage emanating from the center disc; the balance wheel with its balance screws protruding from the outer surface of the balance wheel; the balance spring directly behind the center disc; and the escape wheel at the upper right-hand corner of the device.  The primary differences between this product and applicant's design are that one of the three arms of the carriage is tapered and "the center of the escapement bears a blue gem."[38]

 

The tourbillon shown above at right[39] also closely resembles applicant's design, the primary difference being that one of the three arms of the carriage has been elaborated into an ornamental bell shape.  It is otherwise extremely similar to applicant's design, with a three-armed carriage, the spring behind the central disc; and the balance wheel with its balance screws inserted into the outside edge of the wheel.

We note also the tourbillons shown below at left[40] and right.[41]

---

[38] *Id.* at 6.

[39] Reply brief at 10.

[40] Applicant's response of September 14, 2012, at 10.

[41] *Id.* at 11.

Serial No. 85485359

    

The primary difference in these devices is that the balance wheel does not appear to have separately articulated balance screws; they otherwise resemble applicant's design in many ways.

All of the designs discussed here appear to share the visually prominent components shown in applicant's design; they differ from applicant's design primarily because of added decorative elements or small variations in the functional aspects of the device.

We do note, as applicant points out, that many tourbillons have features that are distinct from those of applicant.  For example, the three arms of the carriage of the Omega tourbillon shown below, at left,[42] are not equally spaced but, instead, form a T shape.  (In other respects, however, the tourbillon closely resembles applicant's design.)  The carriage of the Vacheron Constantin tourbillon shown below, at right,[43] appears to have two arms extending in a straight line from the center, with four other arms forming a Maltese cross (which we take to be ornamental, as a Maltese cross appears as a trademark elsewhere on the face of the watch.)

---

[42] Reply brief at 5.

[43] *Id.* at 7.

18

Serial No. 85485359

   

However, the record on the whole shows that a carriage with three evenly spaced arms, like applicant's carriage, is a commonly used design, and that many tourbillons have designs that closely correspond to the design in applicant's mark. In other words, although the record shows many subtle variations in the basic design of the device, it is clear that the design in applicant's mark depicts a tourbillon and would be easily recognized as such.    Accordingly, applicant's argument that its escapement is unique and distinctive and that, therefore, a depiction of it is distinctive[44] is not supported by this record.

Applicant argues that the design component of its mark requires "a multi-stage reasoning process... to determine the nature of the goods" and that it "requires some operation of the imagination to connect it with the goods," citing *In re Abcor*, 200 USPQ at 218.[45]  We disagree. Inasmuch as the design is a realistic and literal depiction of a fundamental tourbillon, which is a desired component of a horological instrument, in the context of the sale of timepieces or their components no imagination is required to understand the message conveyed by the design, *i.e.*, that the product is a tourbillon or features one.

---

[44] Applicant's brief at 9 and 11.

[45] *Id.* at 11.

Serial No. 85485359

Applicant's argument that its design depicts "only a portion of some horological instruments"[46] is not persuasive.  Assuming that applicant's offered goods are not tourbillons themselves but rather watches that include tourbillons, that fact alone does not render the mark registrable, because a mark that merely describes a "feature" of the goods is "merely descriptive" within the meaning of Section 2(e)(1).  *In re Chamber of Commerce of the U.S.*, 102 USPQ2d at 1219; *see also Pierce Arrow*, 12 USPQ 315 (refusing registration of a depiction of the front end of an automobile for automobiles).  On this record, there is no question that the tourbillon is a significant feature of any watch that has one.[47]  Moreover, the record shows that "tourbillon" or "tourbillon watch" is often used to describe a watch featuring a tourbillon movement.

We note applicant's claim of ownership of design patent No. D568180 which "shows the escapement as well as other mechanisms on the inside of the watch" and "includes, among other things, the distinctive escapement design that appears in the mark."[48]  We are not persuaded that the design patent "is probative of the distinctive elements of the escapement design," as applicant contends.[49]  "[T]he fact that a device is or was the subject of a design patent does not, without more, bestow upon said device the aura of distinctiveness or recognition as a trademark."  *See,*

---

[46] *Id.* at 9.

[47] *Id.* at 7.

[48] Applicant's brief at 6.  A copy of the patent was submitted with applicant's response of September 14, 2012.

[49] *Id.*; Reply brief at 2.

Serial No. 85485359

*e.g., In re Becton, Dickinson and Co.,* 675 F.3d 1368, 102 USPQ2d 1372, 1377 (Fed. Cir. 2012) (citation omitted).[50]

We also note that applicant claims to be the inventor of the tourbillon.[51] Assuming this to be true, registration would not be justified if the only significance conveyed by the design is merely descriptive. *See In re Nat'l Shooting Sports Found., Inc.,* 219 USPQ 1018 (TTAB 1983). In any event, on the present record, which includes third-party references to the invention of the tourbillon in the late 18th century as well as discussions of tourbillon designs that resemble applicant's design to a remarkable extent, there is no reason to believe that applicant has an exclusive right to produce tourbillons in the form depicted in applicant's mark. Indeed, the record includes evidence of tourbillons of others that bear a visual similarity to the design in applicant's mark.

Applicant also argues that its design "will not deprive competitors of using representations of their own products in advertising or selling their goods."[52] We disagree, in view of the many similarities between applicant's design and the third-party tourbillons discussed above. Further, even if there were significant

---

[50] To the extent that applicant is suggesting that, because it is the first and only user of the design depicted in the design patent, the tourbillon design within the patent must be distinctive, we disagree. Being "the first and only one to adopt and use the mark sought to be registered does not prove that the mark is not descriptive." *In re Bailey Meter Co.,* 102 F.2d 843, 41 USPQ 275, 276 (CCPA 1939).

[51] Applicant's claim to have invented the tourbillon and to have coined the term "tourbillon" (*see* applicant's brief at 5 and 12) is not proven on the present record. The evidence contains many references to the invention of the tourbillon by the watchmaker Abraham-Louis Breguet in the late 18th century. We do note, however, that applicant's design patent indicates that it was assigned to Montres Breguet SA.

[52] Applicant's brief at 10.

21

Serial No. 85485359

differences between applicant's tourbillon and others', that would not make applicant's tourbillon depiction distinctive. In refusing registration of a depiction of the front end of an applicant's automobile, the CCPA, in *Pierce Arrow*, rejected "appellant's contention that there is any distinction between a representation of *the* automobile made by appellant and a representation of *an* automobile. In either case the representation is purely descriptive, and it is immaterial, so far as registration is concerned, that the representation shown in appellant's mark is descriptive of only the automobile made by it." 12 USPQ at 316 (emphasis in original).

Finally, applicant points out that the Patent and Trademark Office has registered on the Principal Register certain trademarks for boats that include designs depicting the sail of a boat, even though sails are an important component of a boat.[53] Applicant argues, by analogy, that its own design, which depicts a component of some of applicant's goods, should also be registrable. However, the Board must decide each case on its own merits. *In re Nett Designs* 57 USPQ2d at 1566. Different designs depicting sails and watchworks are, in general, incommensurable, and the question of whether one or the other is "merely descriptive" depends on the specific different contexts in which the designs are used and many other factors affecting the public's perception of such designs. Applicant provides no detailed argument as to why its mark is like or not like the registered marks that contain depictions of sails. Any effort to draw an analogy between them

---

[53] *Id*. at 12.

Serial No. 85485359

is far less meaningful than the detailed analysis we have given to the specific aspects of applicant's design.

Taking into consideration all of the foregoing discussion, we find that the design element of applicant's mark is merely descriptive of applicant's goods within the meaning of Section 2(e)(1).

(c)     Applicant's mark as a whole.

Finally, we consider applicant's word and design mark as a whole. We find that the combination of these two elements does not give rise to any new meaning or suggestiveness. To the contrary, the combination of the word TOURBILLON with applicant's tourbillon design increases, rather than decreases, the clarity with which the design will be perceived as a tourbillon, inasmuch as the wording immediately conveys that information to the customer. This situation is reminiscent of that presented in *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F. 3d 1156, 64 USPQ2d 1375 (Fed. Cir. 2002). That case involved the mark CROSSWORD COMPANION with the design of a crossword puzzle. In assessing the impact on consumers of the design portion of the mark, the Court noted:

> Moreover the words convey, at minimum, some association with crossword puzzles. The only difference between the marks is that Herbko's mark displays the words in a two-row grid between two shorter black bands, with each letter displayed in a separate grid box. This design connotes a crossword puzzle, which reinforces the connotation created by the words of the mark. Thus, the puzzle design does not convey any distinct or separate impression apart from the word portion of the mark. Rather, it serves only to strengthen the impact of the word portion in creating an association with crossword puzzles.

Serial No. 85485359

64 USPQ2d at 1380. We find here that the combination of the design with the word TOURBILLON reinforces the singular impression conveyed by the mark as a whole, which is nothing more than the significance of "tourbillon."[54] And we further find that applicant's mark as a whole is merely descriptive within the meaning of Section 2(e)(1) and that registration must be refused.[55]

2.    Applicant's proffered disclaimer.

Applicant, in its response of September 14, 2012, voluntarily entered a disclaimer of the exclusive right to use TOURBILLON apart from the mark as shown. In its request for reconsideration of April 12, 2013, applicant withdrew the previously offered disclaimer and limited its disclaimer of TOURBILLON to "horological and chronometric instruments."[56]    The Trademark Office database

---

[54] In this regard, we bear in mind that "the question is not whether someone presented with only the mark could guess what the goods or services are. Rather, the question is whether someone who knows what the goods or services are will understand the mark to convey information about them." *DuoProSS Meditech Corp. v. Inviro Medical Devices, Ltd.*, 695 F.3d 1247, 103 USPQ2d 1753, 1757 (Fed. Cir. 2012); *In re Tower Tech Inc.*, 64 USPQ2d 1314, 1316-17 (TTAB 2002) (citation omitted).

[55] For the sake of clarity, we reiterate that although it is not necessary to find that applicant's mark is merely descriptive of all of the identified goods in order to affirm the examining attorney's refusal, we do, in fact, find the mark as a whole to be merely descriptive of "jewellery" as well as "horological and chronometric instruments," inasmuch as the category of jewelry includes watches and watches may include, as a significant component, a tourbillon.

[56] Request for reconsideration at 1 ("Applicant accepts a disclaimer of the term TOURBILLON only with respect to the goods *horological and chronometric instruments*."); Applicant's brief at 5 ("Applicant maintains the disclaimer of the term TOURBILLON with respect to 'horological and chronometric instruments.'") Section 6(a) of the Trademark Act expressly allows an applicant to voluntarily disclaim a component of a mark. 15 U.S.C. § 1056(a). *See In re MCI Commc'ns Corp.*, 21 USPQ2d 1534 (Comm'r Pats. 1991). *See also* TMEP § 1213.01(c) (Oct. 2013) ("[I]f an applicant offers a disclaimer of any matter in a mark, the USPTO will accept the disclaimer.")

Serial No. 85485359

relating to the application now shows *no disclaimer*, although it is clear that applicant intended to enter the limited disclaimer.

In view of our finding that the word TOURBILLON is merely descriptive with respect to *all* of the goods identified in the application, the refusal of registration pursuant to Section 2(e)(1) is also affirmed for lack of a disclaimer applicable to all of the identified goods.[57]

**Decision:** The refusal to register is affirmed.

---

[57] *Cf. In re Society for Private and Commercial Earth Stations*, 226 USPQ 436 (TTAB 1985); *In re Clutter Control Inc.*, 231 USPQ 588, 590 (TTAB 1986).

## CERTIFICATE OF FILING AND SERVICE

I, Kristen A. Mogavero, hereby certify that on June 16, 2014, the foregoing Notice of Appeal is being deposited with the United States Postal Service as Express Mail, postage prepaid, bearing Express Mail Label No. EV166624579US, addressed to the United States Patent and Trademark Office at the following address:

Office of the General Counsel
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, Virginia 22313-1450

I further certify that on June 16, 2014, three copies of this Notice of Appeal and a check made out to the Clerk of the Court for $500.00 are being deposited with United States Postal Service as Express Mail, postage prepaid, bearing Express Mail Label No. EV166624582US, addressed to the U.S. Court of Appeals for the Federal Circuit at the following address:

Clerk's Office
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

I further certify that on June 16, 2014 a copy of this Notice of Appeal is being deposited with the United States Postal Service as Express Mail, postage prepaid, bearing Express Mail Label No. EV166624596US, addressed to the United States Patent and Trademark Office at the following addressvia Express Mail at the following address:

Trademark Trial and Appeal Board
PO Box 1451
Alexandria, VA 22313-1451

Form PTO 55 (12-80)

## U.S. DEPARTMENT OF COMMERCE
### United States Patent and Trademark Office

July 28, 2014
_____
(Date)

**THIS IS TO CERTIFY** that the annexed is an accurate statement of the content entries in the file of the trademark opposition proceeding and involved application identified below. The list was taken from the TSDR and TTABvue electronic databases of this Office and comprises the record before the United States Patent and Trademark Office.

**The Trademark Application of:**

**Applicant: The Swatch Group Management Services AG**

**Application No.: 85/485,359**

**Date Filed: December 1, 2011**

**Mark: TOURBILLON**



By authority of the
DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE

*Certifying Officer*

## PROSECUTION HISTORY – SERIAL NO. 85/485,359

| DATE | DESCRIPTION |
|---|---|
| 12/01/2011 | DRAWING |
| 12/01/2011 | APPLICATION |
| 12/08/2011 | EMAIL: NOTICE OF DESIGN SEARCH CODE AND PSEUDO MARK FOR SERIAL NUMBER 85485359 |
| 03/16/2012 | XSEARCH SEARCH SUMMARY |
| 03/16/2012 | NON-FINAL OFFICE ACTION |
| 03/16/2012 | NOTATION TO FILE |
| 03/16/2012 | NOTATION TO FILE |
| 09/14/2012 | RESPONSE TO OFFICE ACTION |
| 09/18/2012 | AMENDMENT AND MAIL PROCESS COMPLETE |
| 10/12/2012 | FINAL OFFICE ACTION |
| 04/12/2013 | TEAS REQUEST FOR RECONSIDERATION AFTER FINAL OFFICE ACTION |
| 04/12/2013 | NOTICE OF APPEAL |
| 04/12/2013 | APPEAL ACKNOWLEDGED; CASE REMANDED |
| 04/12/2013 | INSTITUTED |
| 04/26/2013 | AMENDMENT AND MAIL PROCESS COMPLETE |
| 05/03/2013 | RECONSIDERATION LETTER: REQUEST FOR RECONSIDERATION DENIED |
| 05/03/2013 | REQUEST FOR RECONSIDERATION DENIED (1 OF 5) |
| 05/03/2013 | REQUEST FOR RECONSIDERATION DENIED (2 OF 5) |
| 05/03/2013 | REQUEST FOR RECONSIDERATION DENIED (3 OF 5) |
| 05/03/2013 | REQUEST FOR RECONSIDERATION DENIED (4 OF 5) |
| 05/03/2013 | REQUEST FOR RECONSIDERATION DENIED (5 OF 5) |
| 05/15/2013 | PROCEEDINGS RESUMED |
| 07/15/2013 | APPEAL BRIEF |
| 07/24/2013 | MEMORANDUM FORWARDING APPEAL BRIEF |
| 09/18/2013 | EXAMINER'S STATEMENT |
| 10/08/2013 | REPLY BRIEF |
| 10/09/2013 | MEMORANDUM FORWARDING REPLY BRIEF |
| 10/28/2013 | SUBMITTED ON BIREF |
| 04/18/2014 | BOARD DECISION: AFFIRMED |
| 06/16/2014 | APPEAL TO CAFC |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing NOTICE FORWARDING CERTIFIED LIST has been served on Appellant this 28th day of July, 2014, as follows:

> Jeffrey A. Lindenbaum
> Collen IP
> The Holyoke-Manhattan Building
> 80 South Highland Avenue
> Ossining, NY 10562
> *Attorney for Appellant*

By: _____

**Shane M. Walter**
Paralegal Specialist

**RECEIPT FOR PAYMENT**

# United States Court of Appeals
# For The Federal Circuit

OFFICE OF THE CLERK

Received From _Collen IP_ (NAME)

_The Swatch Group Management Services SA v._ (ADDRESS)

_TTAB (Serial No. 85485359)_　　6/26/14 (DATE)

## NON-APPROPRIATED ACCOUNT

| | AMOUNT |
|---|---|
| Admission Fee | 500 00 |
| | |
| | |
| Duplicate Cert. of Admission | |
| | |
| | |
| | |
| | |
| | |
| **TOTAL** | 500 00 |

Clerk ☐

Deputy Clerk ☐　☑ JB

Cash ☐　　Check ☑　　MONEY ORDER ☐

28164